Stephen THOMAS, Personal
Representative of the Estate
of Bonita Thomas

v.

Matthew THOMPSON.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 16, 1994.

Decided Feb. 1, 1995.

Sheldon Tepler, Hardy, Wolf & Downing, Lewiston, for plaintiff.

Robert Hoy, Platz & Thompson, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Matthew Thompson appeals from the default judgment entered in the Superior Court (Oxford County, *Alexander, J.*) on the plain-

tiff's wrongful death action. He challenges the court's denial of a combined motion to set aside a default and for leave to file a late answer. Thompson contends that the evidence before the court established a "good cause" within the meaning of M.R.Civ.P. 55(c). We agree and vacate the judgment.

## I. *Background*

This action results from a motor vehicle accident in which Bonita Thomas was killed on December 30, 1991. According to Thompson's affidavit, he was travelling on Route 17 in Roxbury when his vehicle was struck in its own lane of travel by the vehicle driven by Thomas in the opposite direction.

Stephen Thomas, the personal representative of Bonita Thomas, commenced this action against Matthew Thompson by an amended complaint, properly served on Thompson in person at his home in New Jersey on June 19, 1993. Pursuant to Rule 12(a), his answer was due on or before July 9, 1993. Thompson promptly consulted his attorney after receiving service of the complaint. He sent the summons and complaint, as well as a written request that it defend the suit, to Warner Insurance Systems via certified mail.[1] Warner received the materials on June 25, 1993.

Thompson telephoned Warner on July 6, 1993 and was told that the company could not locate the information that Thompson sent them. In response, Thompson promptly arranged for a facsimile transmission of the documents to Warner on July 7, 1993. Herbert Rankin, a claims representative for Material Damage Adjustment Corporation, received the documents on July 8, 1993. Rankin made an unsuccessful attempt to contact Thomas's attorney in Maine to discuss settlement. Meanwhile, Thomas filed a request for a default and a motion for a default judgment and a hearing on damages, with supporting affidavits. The clerk entered a default against Thompson on July 12, 1993.

Rankin finally reached counsel for plaintiff on July 14, 1993 and learned of the entry of the default. Rankin transferred the file to a litigation supervisor, who immediately sent the file to Platz & Thompson in Lewiston. The defendant's answer to Thomas's complaint was served on July 21, 1993 by mail, and entered on the docket on July 22, 1993. Thompson then filed a motion to set aside the entry of default and for leave to file a late answer with a memorandum of law and supporting affidavits. In his affidavit, Herbert Rankin states that the delay in answering the complaint was a consequence of his vacation. When he returned to work, Thompson's suit was one of over 15 new suits which needed immediate attention. Rankin had over 600 cases pending at the time. He further stated in his affidavit that defaults are routinely set aside in New Jersey, and rarely requested in the first place when the insured has acted promptly to send the summons and complaint to his insurer.

The court denied the motion to set aside the default based on Thomas' representation through counsel that he would not seek recovery from Thompson personally. A damages hearing took place on April 5, 1994. The court (Bradford, J.) entered a judgment against Thompson for $79,642 plus interest and costs. Thompson appeals.

## II. *The Legal Standard*

■ "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." M.R.Civ.P. 55(c). Considerable deference is accorded the determination of a trial court in ruling on a motion to set aside an entry of a default. *Boit v. Brookstone Co.*, 641 A.2d 864, 865 (Me.1994). The denial of a motion for relief from the entry of a default is reviewed only for an abuse of discretion. *Vargelis v. Minieri*, 620 A.2d 275, 275–76 (Me.1993); *Mockus v. Melanson*, 615 A.2d 245, 247 (Me.1992).

■■ The proponent of a motion pursuant to M.R.Civ.P. 55(c) must show both a good excuse for untimeliness in pleading and

---

1. Warner Insurance Systems is a carrier for underwriting purposes within the Market Transition Facility of the State of New Jersey. Material Damage Adjustment Corporation handles its claims.

also the existence of a meritorious defense.[2] *Hamby v. Thomas Realty Assocs.*, 617 A.2d 562, 563–64 (Me.1992) (citing *Design Build of Maine v. Paul*, 601 A.2d 1089, 1091 (Me. 1992)). Thomas concedes that Thompson has a meritorious defense. He argues, however, that there was no good excuse for the untimely response, and hence no good cause for setting aside the entry of a default.

### III. *The Court's Rulings*

This case comes to us under unusual circumstances. The court denied the motion to set aside the entry of a default solely on the strength of counsel's representation that Thomas would "not seek recovery directly against individual defendant." Implicit in the court's ruling is a finding that, in the absence of such a representation, the court would have set aside the entry of the default for a good cause. The issues before us, therefore, are the correctness of the court's implicit finding that there was a good cause for setting aside the entry of a default, and of its refusal to set aside the entry of a default because of the representation of Thomas's counsel that there would be no recovery against the individual defendant Thompson.

### *Good Cause*

■ There is a strong preference in our law for deciding cases on the merits. *Wescott v. Allstate Ins.*, 397 A.2d 156 (Me.1979); *see* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 55.7 at 24–25 (2d ed. 1970). Consistent with this preference, we note that under Fed.R.Civ.P. 55(c), which is identical to M.R.Civ.P. 55(c), motions to set aside a default have been granted in cases when no gross neglect was involved in the late filing, the nondefaulting party will not be substantially prejudiced by reopening the case, and a meritorious defense exists. 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2696 at 518–19 (1983) (citing numerous federal cases).

■ The assessment of neglect in default cases often requires an evaluation of the conduct of both the insured and the insurer. Although we reaffirm the principle that an insured is generally held accountable for the actions of the insurer which cause an entry of a default against the insured, *see, e.g., Boit v. Brookstone Co.*, 641 A.2d 864 (Me.1994); *Firth v. City of Rockland*, 580 A.2d 694 (Me.1990), the conscientiousness of the insured in seeking a timely response to a lawsuit can mitigate the impact of this principle in a default situation.

■ In this case, Thompson went to considerable lengths to assure a timely response to the cause of action against him. In addition to forwarding the summons and complaint to his insurer promptly, Thompson thereafter contacted his insurer to inquire about the case. When he was told that the company could not locate the information he sent them, he responded by arranging for a facsimile transmission of the documents to his insurer. In short, Thompson did everything that one could reasonably ask an insured to do to assure a timely response.

Although the insurer was clearly remiss in not having a system in place to monitor Rankin's files while he was on vacation, the insurer took prompt action after becoming aware of the default to file a response which, in fact, was only about two weeks late. In these circumstances, there was no gross neglect on the part of the insured or the insurer with respect to the late filing. In addition, there was no showing of prejudice to the nondefaulting party by a reopening of the case, and the meritorious defense is conceded. These factors amply support the trial court's implicit finding that there was a good cause to set aside the entry of a default.

### *The "Non–Recovery" Against the Defendant*

■ Having found implicitly that there was a good cause to set aside the entry of a

---

2. The showing of a good cause essential to setting aside an entry of a default pursuant to M.R.Civ.P. 55(c) must be distinguished from the excusable neglect showing required to set aside a default judgment pursuant to M.R.Civ.P. 60(b). "The excusable neglect standard of Rule 60(b)(1) is more stringent than the good cause standard of Rule 55(c)." *Theriault v. Gauthier*, 634 A.2d 1255, 1256–57 (Me.1993) (citing *Hamby v. Thomas Realty Assocs.*, 617 A.2d at 563–64); *Michaud v. Mutual Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 790 (Me.1986).

default, the trial court could not refuse to set aside that entry because of the representation of Thomas's counsel that only the defendant's insurer would have to answer financially for the default. The question of who pays any settlement or satisfies a judgment resulting from the lawsuit is irrelevant to the "good cause" determination, which is based only on an evaluation of the conduct of the defendant responsible for the default and the agent or agents of the defendant.

 Moreover, the representation accepted by the court purporting to protect the insured from any financial loss offers only the illusion of protection. A judgment has been entered against Thompson in the amount of $79,642, plus interest and costs. That judgment contains no restriction against recovery from Thompson personally, and there are no documents of record confirming that the personal representative of the estate of Bonita Thomas has waived the right of recovery against Thompson. There are many instances of parties to litigation repudiating the unauthorized representation of counsel. That possibility is present here. Although Thomas, having procured a judgment against Thompson, may intend to seek a settlement with Thompson's insurance company or satisfaction of the judgment through a "reach and apply" action[3] against it, the outcome of those initiatives is uncertain and Thompson remains potentially liable for the judgment as entered.

In fashioning its order, the trial court focused only on protecting Thompson from financial loss and ignored his legitimate interest in defending himself against the claim that his negligence caused the death of Bonita Thomas. The judgment entered establishes Thompson's liability for her death despite the existence of a meritorious defense. That judgment of responsibility for another's death is no small matter. The trial court's order does nothing to protect Thompson from that stigma.

3. 24–A M.R.S.A. § 2904 (1990) provides in pertinent part:
 Whenever any person . . . recovers a final judgment against any other person for any loss or damage specified in section 2903, the judg-

*Conclusion*

The court's implicit finding of a good cause to set aside the entry of a default required it to order the relief sought. Its failure to do so was an abuse of discretion.

The entry is:

Judgment vacated. Remanded for the entry of an order vacating the entry of the default and permitting the filing of defendant's answer.

All concurring.

ment creditor shall be entitled to have the insurance money applied to the satisfaction and the judgment by bringing a civil action . . . against the insurer to reach and apply the insurance money. . . .